Good morning, Your Honors. May it please the Court, Cheryl Weitschinger on behalf of Defendant and Appellant Scottsdale Insurance Company. The Court here is presented with a legal issue of whether exclusion J-1 in Scottsdale Insurance Company's policy, Issue 2, John Dowson, as the underlying action asserted against them by the co-vocages. Here, in evaluating whether the exclusion applies, the Court must consider the duty to defend standard under Montana law. That standard provides that unless there is an unequivocal demonstration that the claim presented against the insured does not fall within the insurance policy's coverage, there is a duty to defend. Here, Scottsdale made such an unequivocal demonstration that the claims and the underlying action presented against their insured, Montana Pride, LLC, did not fall within the insurance coverage afforded by Scottsdale. It did that twice. It did that initially on October 29, 2012, and it did that again on October 30, 2012. It did that again on November 6, 2009, and again on December 13, 2010. It focused on the Earth Movement Clause. It didn't argue in any detail or cite or explain in any detail the exclusion. They're now arguing on a deal. Is that correct? Actually, the initial declination letter did state... I'm looking at the December 21. If you look first at the letter dated November 16, 2009, which is in Volume 3, starting at page 565 on page 2 of the letter, Scottsdale set forth the facts that had been included in the underlying action presented by the Kovacichs, that they purchased their home from the insurers on September 28, 2007, which is 3 1⁄2 months after the Scottsdale policy had expired. At page 5 of the denial letter, Scottsdale quoted the owned property exclusion and stated in the letter that Scottsdale intended to rely upon the above-referenced exclusions, which exclusions included the owned property exclusion. Now, insurance companies are required to provide the insured with notice of all the exclusions that they intend to rely upon, and here Scottsdale unequivocally relied upon the owned property exclusion in both of its declination letters. Now, the basis for denying on this... It unequivocally relies on it by just listing out these exclusions. Pardon? You say that it's unequivocally relying on it just because it listed out a set of provisions and exclusions. But the letter did state that the exclusion is set forth on page 5 at the bottom. And then the letter went on to state that policy does not provide coverage to any claim or allegations or damage which is subject to these exclusions. What are you reading from? Pardon? What are you reading from? I'm reading from the letter dated November 6, 2005. Sorry? What page? November 16, 2009. What page is the letter? Oh, I'm sorry. I'm sorry. Page 7. Okay. At the bottom of the last quoted exclusion, it states, this policy does not provide coverage for any claim, allegation, or damage which is subject to and included within the quoted exclusions. That's the whole explanation? Well, an insurance company is required to provide information to the insured which advises them not of just one exclusion, but if the insurance company intends to rely upon more exclusions than one, they need to include that in the letter to give the insured information. But here, the insured unequivocally knew that they owned the property because prior to Scottsdale issuing its declination letter not one case or cases establishes the scope of the obligation to inform the insured of the reason for the exclusion. Portal Pipe. Not coverage. Portal Pipe versus Stonewall states that in Montana, an insurance company has an obligation to inform the insured of all policy defenses it intends to rely upon. Yeah, but then Newman comes along and says you have to have some kind of detail. And if one looks at the November 16 letter on page, was it 13? It talks about the company's coverage position, and it says it's coverage denial, which is a section. And it is our understanding, based on the facts and information presently available to us, that the property damages arise from earth movement. And then it goes on. And this is basically the same language that appears a year later, or almost a little more than a year later, in 2010, whatever the next year is. And I acknowledge in the conclusion that the bottom, it says the grounds upon which the company bases its position are non-exclusive. But that doesn't seem to comport with Newman. Maybe on soil movement, yes. But the Montana Supreme Court rejected the contention that an insurance company is limited to the defenses detailed in its reservation of rights, and that's portal pipe. Here there's no coverage by estoppel because the insured had no reasonable expectation for there to be coverage under the Scottsdale policy. And it's important to be clear. Well, what about, counsel, what about your opponent's reliance on the, I think it's the completed operations provision. I can't remember exactly which provision they relied on in their brief, but I thought they cited a provision that at least arguably would cover this, you know, the damage done to that home. And the products completed operations coverage does not apply here because throughout the Scottsdale policy, the property was actually owned by the insured. And so for products completed operations coverage to apply, the property may not be owned by the insured. I just thought that the insured couldn't, I don't know, like rent, or I can't remember what the series of phrases was, but I thought that was the problem. You know, if you're renting it or you're living in it, obviously no, we're not going to cover that. But here they were, it was just part of their business. That was what they were doing. What I think you're referring to is the premises alienated exclusion, which is not an exclusion. That's at issue here. What we're referring to is Exclusion J1, the Own Property Exclusion, and this exclusion applies to exclude an entire category of damage. And under courts' decisions in California, Oregon, and Washington, this exclusion is applied not only to the named insured, but to any insured, so that a third policy, third-party policy such as this, does not become a first-party coverage which insures damage to an insured's own property. Now this is a very broad exclusion, and it applies not only to the named insured, but it states specifically that this insurance does not apply to property damage to Property U, which is defined to be the named insured. So this insurance does not apply to property damage to property Montana Pride owns, rents, or occupies, including any costs or expenses incurred by you, which is Montana Pride, or any other person or organization for repair, replacement, enhancement, restoration, or maintenance of such property for any reason. And therefore, this entire category of damage, damage to the property that's owned by the insured during the policy period, is excluded from coverage. And here, if there was a judgment against John Dowson, he would have been any other person to which this insurance exclusion applies. But isn't their business building, their business, I assume, is building homes, right? So aren't they, huh? It is. And they've been in business since 2004. So to the extent. Okay, but so, I mean, if I'm building homes, and I take out an insurance policy that's going to cover my completed operations or whatever, you know, sort of work product I'm producing, if I screw up in some fashion, wouldn't I reasonably expect to look to your client for coverage for that? And you're basically saying, well, actually, there's not going to be coverage, because presumably you would have owned whatever house you were building, no? The insurance policy that could potentially apply here is the other policies that Montana Pride purchased after the Scottsdale policy. So Scottsdale's policy applies to prior completed operations. Montana Pride has been in business since 2004. To the extent they built homes and sold them in 2004, and those homes sustained damage during the Scottsdale policy, then those claims could fall within the coverage avoided by the policy. Additionally, during the course of construction, for example, if they were putting an air conditioning unit on the roof of the COVID kitchen's home, soon to be home, if that air conditioning unit fell on the house adjacent to an already existing property, that's a claim that could fall within the coverage avoided by this policy. This is no different than if you have an auto policy, you need to continue purchasing policies in case there's an accident during any particular year. CGL coverage works the same way. So this insurance policy applies to the insured's products completed operations coverage to the extent there are products completed operations coverage during the policy. But I thought that part of the – I can't remember the home buyer's name. Is it the COVIDchicks? I think it's COVIDkitch. The COVIDkitch. Okay. Well, I thought that part of their allegations, though, was that although the problems with their home arose obviously after they bought it, and so after the insured no longer owned it, part of what caused that was work that was done during the policy period, and that's where the defects were introduced into the home, right? That's true. They did make that allegation, but you have to read the policy as a whole. It's a contract. And this policy, like every standard CGL policy, has business risk exclusions, which are the J exclusions, K, and L. And you need to read those exclusions where they are plain and apply them to the facts here. And what's alleged is that any property damage that occurred while the insured's owned the home is excluded by J1, and that applies whether or not the claim is asserted against the named insured or any other insured. So with regard to the Scottsdale policy, there's no coverage for damage to the home during the Scottsdale policy, but the policy issued by Mid-Continent and subsequent insurers could apply with regard to this claim. Now, the insured had been in business for a long time, so there was a potential for coverage with regard to other homes, and that's why the insured maintains insurance coverage for a period of time and the statutory period after the home is built. Now, you give me a lot of detail, and that may be to the point, but I'm trying to understand Montana law, and here we have a 2013 case from the Montana Supreme Court, and one of the things that caught my eye in light of the letters that were sent was that the mere existence of the exclusions in Scottsdale's policy did not establish an unequivocal demonstration that the claim did not fall within the insurance policy's coverage. And I don't understand how those letters constitute an unequivocal demonstration as contemplated by Newman. Well, the courts have held that the insurer needs to give the insured notice of all the bases upon which they're going to deny coverage. Yeah, please address what I'm reading, the mere existence of the exclusions. But the letter does also state that the co-vacations purchased their home on September 28, 2007. And that date is three, the policy periods are set forth also in the very first page of the letter. So it's clear that the plaintiffs in the underlying action did not purchase their home. Yeah, but it wasn't played from anything in the letter that they had, that Dowson had owned the home for the entire period. The insured had provided a letter to the insurer, to Scottsdale, before they issued their denial. And that letter set forth the date of construction, the date that the home was completed, and the date that the home was sold. So the insured provided corroborating evidence, which even ... What do you mean by the date of construction? Pardon? What do you mean by the date of construction? They stated in the letter when construction of the home began, which is during the Scottsdale policy, on July 14, 2005. Excuse me, July 14, 2006, the home construction began. On June 8, 2007, the Scottsdale policy expired. And on June 28, 2007, this is stated in the letter, the work was completed. They say that they owned the property at the time that construction began? The complaint did allege that. They didn't say that they owned it. The complaint stated that the insured began construction. The complaint alleged that the Montana Pride purchased the lot upon which the work, the home, was constructed. And here the home was constructed on July 14, 2006. That's within the Scottsdale policy period. The letter provided from the insured to Scottsdale confirmed that the work wasn't completed before the Scottsdale policy expired, and therefore there could be no potential for coverage, completed operations coverage, because the work was not completed and the home was not sold until three and a half months after the Scottsdale policy expired. And that demonstrates that the exclusion, the J1 exclusion, property owned exclusion, applies to exclude coverage for this entire category of damage with regard to any insured who is making a claim. The insured knew this information was important to its insurers, and that's why it affirmatively provided this information. This information is consistent with the allegations in the underlying complaint. So Scottsdale wasn't looking to information extrinsic to the complaint that wasn't already provided to it. It has an obligation to consider that information. And the dates at issue weren't something that were disputed in the underlying action. And because here Scottsdale had continuously denied coverage, the insurers were provided with a defense by Mountain West, they had no reasonable basis to believe that this third-party policy would afford them with first-party coverage during the Scottsdale policy period. And for that reason, Scottsdale believes it provided an unequivocal demonstration that there was no potential for coverage. The insured had no reasonable basis to leave their coverage. To go back to where we started from, do you agree that the unequivocal demonstration, whatever it is, has to have been made in the original denial letter? Yes, I do. And I believe that Scottsdale did that. It relied upon information provided by the insured. All right. You're over your time, so we'll get on with it. Thank you very much. May it please the Court. Martha Sheehy on behalf of Mountain West and Angela Towson. I'd like to start by saying regardless of whether you buy the exclamation of J1 and how it applies to PCOH and other coverages under the policy, nowhere in either denial letter did Scottsdale explain that to the insured. That is the essential problem in this case. It starts with the opening line of the argument, which was that we're here today to decide whether exclusion J1 applies. That's not why we're here today. That standard does not apply. Under Montana law, the only issue before this Court is whether those two letters, and really the first one, provided an unequivocal demonstration that there was no possibility of coverage. I'd like to answer Judge Berzon's question because I think the lack of answer to that question of what is the scope of the obligation in making the unequivocal showing shows what one of the problems is in this case. Scottsdale has misunderstood and misrepresented the difference between a reservation of rights and a denial. They are entirely different things. And they were different in both of these letters. You can see that what Scottsdale did in both the November 16, 2009 letter and the December 13, 2010 letter, is set forth numerous policy provisions upon which it was reserving its rights, but it denied on only one policy provision, and that was the Earth Movement exclusion, which Scottsdale later determined did not apply to exclude coverage. Why is that important? It's important because of the scope of the obligation in denying. The scope of the obligation is not set forth in Portal. That is a reservation of rights case. The scope of the obligation is set forth in Statute 3318.201.14. And that statute provides that the insurer must apply the policy provisions to fact and law. It states that an insurer must, quote, promptly provide a reasonable explanation of the basis in the policy in relation to facts or applicable law for the denial of a claim. That's different than reservation. So, yes, Scottsdale had every right on Earth to reserve as to anything. But as to the denial, Scottsdale had an affirmative obligation to apply facts or law and to explain how this policy provision excluded all possibility of coverage. You said that the first letter is important, but my recollection is that the insurer can deny coverage but can, based on the complaint, or at least articulate why they don't think there's coverage. But then they would either have the choice of resting on that or they could proceed to defend and then discover facts or information that would make it clear that they didn't have coverage and therefore no duty to defend. And so that's why I was looking at the later letter because by then they'd have a year, presumably, to gather more facts. What should they have done then? Provided defense under a reservation, and if it was contested still at that point by Dowson, they would have had to seek a declaratory relief to get themselves out. They couldn't just unilaterally, or if they did unilaterally withdraw, then we'd be where we are here today. That's correct, Judge Fischer. Even if they turn out to be right that the ownership clause once analyzed would in fact show that there was initially no coverage. That's exactly right. The reason I say that the first letter is important is that's when they denied defense. And from the time of the first letter through the time of the second letter, their insured was without a defense. They were not defended. Their corporate attorney continued to try to assert coverage issues and do some things, but as the other parties in the underlying action were getting experts, conducting discovery, this insured was out in the cold, and it affected the settlement value of this case. So that first denial, because they did not do what they should have done under Montana law and defend while awaiting more information, the first denial is very important because it costs their insured everything in this case. More to your point of your second question, the ramifications of failing to defend seem draconian sometimes to people outside of Montana. If you fail to defend and you wrongfully do so, you lose all of your policy defenses as an insurer. They are gone. They're gone with respect to your policyholder or any assignee. But the rule is very clear. Montana Supreme Court has, quote, repeatedly admonished insurers, unquote, facing a coverage question to, quote, defend the insured and file a declaratory judgment action to discern coverage, unquote. That's stated in State Farm versus Friar. It started in Staples. Our Montana Supreme Court has on numerous occasions reached out and in every opinion says, how many times do we have to tell you we caution insurers, defend under a reservation of rights and determine the coverage issue if you can't make the unequivocal showing? Can I ask you this? Absolutely. Are you asking us or suggesting that for purposes of resolving this appeal, we could just basically cite the language from Newman that Judge Fisher was quoting and just stop right there? Just say that merely reciting a whole bunch of policy exclusions with no explanation, that's just not sufficient. You lose. End of case? That is the end of the case, and there's good authority for that, Judge. But Newman himself, when he said that, was not specifically talking in the context of what the denial letter said. No, it wasn't. But in Pacific Hide and Fur, which I cited in my 28J letter, Judge Christensen, interpreting Montana law as a federal district judge in Montana, went a step further and applied that language exactly to the problem here. And in that case, the court said, vague general and equivocal reservation of rights is insufficient to establish the unequivocal demonstration that no possibility of coverage exists. Quote, this court interprets this provision in the denial letter merely as an attempt to reserve numerous other possible grounds for denial, for which great American, the insurer in that case, offers no meaningful support, unquote. The court went on to say that an insurer which raises a Go ahead, Judge. I'm sorry. I had a follow-up question. I get your first point, but let's say for whatever reason we were to disagree with you on that. Okay. And we were to think that, okay, well, at least they cited the relevant policy exclusion. So just explain to me or explain to us in as clear a term as you can why there's just simply no or at least there's a good faith debate that one could have about whether that exclusion did or didn't apply here. The reason there's a good faith, I'm going to go back to the case that Judge Fisher quoted where it says the mere existence of exclusion in the policy. If you look right above that part of the decision, there's a line that says that this is especially true with respect to reliance on exclusions because exclusions are frequently challenged on the basis of conflict or ambiguity. There is no case in Montana that unequivocally demonstrates that J-1 precludes all coverage. In fact, there is a raging debate about the PCOH and how that is applied. There is no demonstration. Oh, I'm sorry, the completed operations hazard. So in this case, they're relying on an exclusion. Where is the completed operations permission? Pardon? Where is the completed operations permission in the first policy? It's endorsed under the first policy. So it's at the end? I think so, Judge. Completed operations is an additional coverage purchased by the insured. And in the declarations page, you'll see that Montana Pride did purchase that additional coverage. So it had $2 million in coverage for completed operations. Now they're saying that even though they never said so, the J-1 exclusion precludes all possibility of coverage under that. There's no case that tells you that. And there are several that say the product's completed operation hazard because it's inclusionary and it provides coverage can't be overridden by exclusionary, which must be narrowly construed. So in this case, looking back to the language in Newman, not only is that just the mere existence of this exclusion, but it would be challenged as it is now on the grounds that it conflicts with other policy provisions. When there's a general provision and a specific provision in a policy, the specific controls, there's a specific provision in this policy, J-2, which provides for when coverage applies or is excluded to premises you sell. These were premises you sell. Note the different language in J-2 from J-1, which refers to property you own. This is a contractor's policy, and to the point that Judge Watford made earlier, contractors own the property, they build the house on it, and they sell it. This damage in the underlying case wasn't to the property. It was to the premises. The insurer chose those two different terms. Scottsdale admits that the premises you sell exclusion does not exclude coverage in this case. If you actually get to the issue of whether the owned property exclusion precludes coverage in this case, it does not. It is an ambiguous and conflicts with other portions of the policy, two of which we've discussed, the completed operations and J-2. And they didn't ever establish that that ambiguity was resolved. Moreover, they never established that the owned property exclusion applied to their other insured, John Dowson. They claim that it couldn't apply to him because if there were any liability against him, it wouldn't be covered anyway. That has nothing to do with the duty to defend John Dowson. There were claims made against John Dowson. They admit he's an insured, and they admit that he's not a named insured. He's an insured by definition. They had a duty to defend John Dowson, whether Montana Pride owned this property or not. And that's... My understanding of what they said about that was that the owned property exclusion takes, if it applies, takes damage to that property out of coverage, no matter who is being sued on it. Yes. That's their argument, and it's contrary to Montana law. I'm sorry, because? Because in the Swank case, there was another J exclusion at issue in that case, but the same kind of language where it said property you own. The insurance company has defined you as the named insured, only the named insured. The Montana Supreme Court in Swank said when your policy defines you as the named insured and you have additional insureds or insureds by definition, those exclusions do not apply against anyone other than the named insured, because the policy has a separability of interest, separability of insurance clause. This is settled under Montana law in the Swank decision. There's no distinction of it. They have not established that John Dowson was not covered. Montana is a mixed action rule. So if any one claim in the complaint gives rise to a possibility of coverage, they have a duty to defend. They didn't do that. They failed to defend. They failed to make an unequivocal showing. And getting back to Judge Wofford's question, I don't want to back away at all from Montana law, which is this is not about whether J1 applies. This is only a question of whether those two denial letters constitute an unequivocal demonstration that J1 precludes coverage for the negligence claim, the negligent misrepresentation claim, the breach of warranty claim, every claim in the underlying count, every damage in the underlying count. Okay. Your best case for the proposition that just merely reciting the policy exclusions isn't enough to demonstrate, because I agree with you. I read that letter and it doesn't demonstrate anything to me. It's just a bunch of boilerplate quoted back at the insured. So what's your best Montana case? Not a federal district court case, but a Montana case that stands for the proposition that we should just say the quoting of those exclusions in the denial letter, not enough, end of case. Is it Newman? The best cases are all of them, from Staples to Nielsen to Newman to Tidy Mans and the statute upon which all of those are based, 33-18-201-14, which provides, unlike when reserving, when denying coverage, the insurer must promptly apply the provision to facts or law. You have to inform the insured of the provision and you have to apply facts to law. So while this looks like a new thing under the federal district court decision, this is not news to anyone in Montana. We have been operating under this stricture since the enactment of 33-18-201. There are only 14 requirements under that statute. This is a very important requirement and they breached it. So to close, I would draw your attention to either denial letter. The denial letters contain, like on Volume 4, Experts 595, coverage denial. The only grounds for coverage denial is one that doesn't any longer exist, and that's the Earth Movement exclusion. That is not an unequivocal demonstration under Montana law. There is no demonstration here. Can I ask you one little housekeeping question? Your complaint in this case was a multiple count complaint, right? Yes. I don't know, three, four, five counts against the defendant. You moved for summary judgment on count one, if I remember, and that was granted. What happened to the other counts? Were they ever disposed of? They were not disposed of because it was fully disposed of on the easiest basis of all the equivocal demonstration. No, no, no. Okay, but you had, I'm just trying to figure out, do we have a truly final judgment here? Did all of the claims eventually get resolved? Did you voluntarily dismiss the remaining ones after you won all the relief you wanted on count one? I don't remember doing that, Judge, but we accepted the final judgment as resolving all claims because we claimed the same damages in each of those and we were awarded the damages we sought. It sucked because the other claims were, some of them were, you were basically sued with a different hat on. Yes. Right? So I don't know whether it would make any difference whether you got redundant judgments with regard to one as an asidee and secondly as an indemnity or contribution claim. Are they punishable judgments, I guess is what I'm asking. Because the judge awarded us the requested relief that is personal to Angela Dowson, we are an assignee, but Angela Dowson also had a claim in this case because during that year period where she was undisbanded, she actually spent out of her own pocket $25,000 in fees and costs trying to keep this thing alive. Angela Dowson's husband, the defendant in the underlying case, died during the penancy and so Angela stepped in and Angela was spending money and trying to sell the estate at the same time. So there were claims that were only with respect to Angela. So that judgment includes $25,000 of her money. Okay. Thank you. I'll give you a minute or so in rebuttal. Thank you. I would first like to address the last issue that was presented regarding the various claims that were asserted. First, the Dowson claim was assigned to Mountain West, the insurer that assumed the defense. And so the breach of contract claim that was asserted by Angela Dowson is a claim for attorney's fees, $24,000, that she incurred before Mountain West assumed the defense. The second aspect of the damage claim are the attorney's fees incurred by Mountain West, which also afforded coverage to Montana Pride and John Dowson, as well as a settlement that was paid by Mountain West on behalf of its insurers. And so there's the $275,000 settlement that was paid by Mountain West. That judgment in this case is still a judgment of the assigned claim of Dowson, no? It is. The court found that because in its view Scottsdale should have defended that the entire judgment should be paid by Scottsdale. Scottsdale's. Well, no. You see, your brief kept doing that. But my understanding is that isn't what happened here. That was an alternative that wasn't adjudicated, which raises the issue that Judge Watford raised. But all that was adjudicated here was it had the net result that the, that you've described. But the claim was an assigned claim from the insured, no? It was an assigned claim. So the damage claim that was assigned pertained to the damage that were actually sustained by the insured for their breach of contract, breach of the duty to defend, which was the $24,000. I thought it was all of it. No, the other portion was paid by Mountain West as an insurer of Montana Pride. So Montana Pride is an additional insured on the Mountain West policy when the second amended complaint was filed. Mountain West insured was sued. Montana Pride tendered its defense, and Mountain West assumed the defense of its insured and paid the defense fees and settled the claim against its insured. But Gowson still had a judgment, a cause of action against Scottsdale for not defending it. Correct. And that claim is a $24,000 claim. And I'd also like to just quickly address Swank and explain why Swank doesn't apply, why Staples doesn't apply, and why Pacific High doesn't apply. In Swank, the court found that the J exclusions, J5 and J6, which is not the exclusion at issue here, at issue here is J1. The court found that exclusions J5 and J6 were ambiguous because the insurer in that case had modified a subsequent policy to state that J5 and J6 applied to additional insurance. So the court necessarily found that the 1997 policy had been changed in 1998, therefore found that the policy was ambiguous. And Pacific High doesn't apply here because the court turned on undisputed facts. So Pacific High was similar to Staples, where in the underlying action there were disputed facts which affected whether or not there was coverage here. In the present case, there are no disputed facts. It's undisputed that Montana Pride owned the home throughout the Scottsdale policy period and that exclusion J1 applies to exclude the entire category of damage. The Swank court did not consider exclusion J1. It's a different exclusion, and it's actually similar to another Ninth Circuit decision in Colmore, where the court said you look at the category of damage that's excluded and apply the exclusion based on the plain language, and you apply it to who it states that it applied to. Exclusion J1 doesn't state that it applies to a named insured to exclude property damage owned by the named insured. The exclusion states that this insurance does not apply to property damage to property owned by the named insured. So that's why it applies not only to Montana Pride but also to John Dallas. Thank you.
judges: Fisher, Berzon, Watford